On the 27th of the same month, the President delivered the unanimous opinion of the court.
Shippen, President.
The question before us is, whether the foreign attachments, or the domestic attachment, issued against Lazarus Barnet, shall be established ? The arguments in support of the foreign attachments, are chiefly founded on the third clause in the first act of assembly, which says that “ no writ of attachment shall be granted against any person’s effects, but such only as, at the time of granting such writs, are not resident, or residing, within this province ; ” and on that of the second act, which leaves non-residents to be proceeded against by foreign attachments, agreeable to the directions of the first act. And it is urged, that in the present case, it does not appear that Lazarus Barnet was resident or residing within the state, at the time of granting the domestic attachment, and, if he was not so resident, he is the object of the foreign attachment law.
Our opinion on this case, must be founded upon a connected view of the several acts of assembly relating to attachments; and these are the 4 Ann., c. 28, the 9 Geo. I, c. 3, and the 14 Geo. III, c. 5.(a)
The object in passing the first act was, to subject the effects of absent debtors to the payment of their debts ; as it appears by the preamble, that before that time, they were not equally liable with the effects of those persons who resided on the spot. Within the provisions of that act, three sorts of debtors were included : — 1st. Those who never resided here, or whose actual residence was abroad. 2d. Those who had resided here, and had absconded, or otherwise removed ; both of which are comprised in the general description of non-residents in the third clause of the act. And 3d. Those who *were still here, but were about to remove, without giving security to their creditors. In the second act, it is stated, “that divers irregularities and fraudulent practices had happened, to the injury of such creditors as were willing to accept an equal share of the effects of their debtors,” and from these general expressions we are left to consider, to which of the foregoing descriptions of debtors, the preamble refers. It could not be the first; they residing abroad, and their effects coming here only occasionally, there was no great danger of fraudulent practices ; and so it appears by the subsequent law still continuing the same remedy against them. With respect, however, to the other two classes, it was possible for a creditor to seduce his debtor to leave the province, or to entrap him into the commission of some other act, which brought him within the construction of *158 the law, and to seize upon all his effects. The act, therefore, makes an entire new provision, with respect to both the latter descriptions of persons, and consolidates the two cases. It mentions nothing of persons absenting themselves out of the province, nor of persons refusing to give security ; but enacts, generally, that all persons who had absconded from their usual place of abode, for six days, with design to defraud their creditors, and not distinguishing whether in the province, or out of the province ; if they absconded with that design, they were persons whose effects the legislature intended should be divided among their creditors. To say, that they must be still remaining in the province, would be needlessly restraining the generality of the words of the act, which suggests that sometimes they may have left the province, by the words, “ and had not left a clear estate in fee simple, within the province, sufficient to pay their debts.”
The last clause of the second act provides, that “ nothing in this act shall be construed to exempt the goods or effects of any person or persons, not inhabitants of this province, from being attached according to the directions of the former act.” Here appears a designed variation from the expression used in the first act: it does not say persons not residing in the province, at the time of issuing the attachment, but, generally, persons not inhabitants of the province, and seems expressly meant to take in only those persons first described in the former act, persons who never resided here, or whose actual residence was in another country. A contrary construction would defeat the general intention of the legislature, as in -most cases, those debtors who escape from their creditors, go out of the state. Nor is it material as to the policy of the act, whether he remains in the state, or goes out of it; ho has committed an act similar to an act of bankruptcy, by absconding with a fraudulent design ; and in that case, and in that only, is he the object of the second act.
The word “ inhabitant ” has a plain meaning. A person coming hither occasionally, as a captain of a ship, in the course of trade, cannot be called an inhabitant; nor does a person going from his settled habitation here, on occasional business to Boston, or any other place, cease to be an inhabitant.
But a man who comes, from *another place to reside among us, introduces his family here, takes a house, engages in trade, contracts debts, and, after some time, runs away with design to defraud his creditors, he ought surely to be considered such an inhabitant as not to be an object of the foreign attachment, but of the domestic one, and as a person whose effects should be seized for the benefit of all his creditors, and not of the first creditor who shall take out a foreign attachment, otherwise, there would be few objects for this equitable law to operate upon.
Such has been the uniform construction of the law of attachments in Pennsylvania from the year 1724, to the passing of the act of the 14 Greo. III., c. 5, which last act gives a legislative sanction to the preceding practice. TV e have, therefore, no hesitation in declaring our unanimous opinion, that the foreign attachments against Lazarus Barnet be dissolved, (a)
The foreign attachments dissolved.

 Acts of 1705 (1 Sm. Laws. 45), 1723 (Id. 158), and 1774 (repealed).

 See Taylor v. Knox, post, p. 158; Lyle v. Foreman, post, p. 480; Kennedy v. Baillie, 3 Yeates 55; Nailor v. French, 4 Id. 241; Bainbridge v. Alderson, 2 Bro. 51; Redwood v. Consequa, Id. 62.